UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR No. 09-024S |
| | : | |
| ROCCO DeSIMONE | : | |

**MEMORANDUM AND ORDER**

Pending before the Court for determination (28 U.S.C. § 636(b)(1)(A); LR Cr 57.2(a)) is the Government's Motion to Detain Defendant Pending Trial.  (Document No. 3).  Pursuant to 18 U.S.C. § 3142(f), a detention hearing was held on March 27, 2009 to determine if any condition or combination of conditions of release would reasonably assure (1) Defendant's appearance at future Court proceedings including trial; and (2) the safety of the community.  Both sides have submitted legal memoranda to the Court (Document Nos. 3-2 and 7) and, at the hearing, the Court received three exhibits from Defendant (Def.'s Ex. A-C), and Defendant called one witness.

**Background**

Unfortunately, Defendant is no stranger to this Court.  Defendant was indicted in 2004 for two counts of wire fraud and one count of filing a false income tax return.  United States v. DeSimone, CR No. 04-080S.  Defendant was released on bail pending trial.  On March 22, 2005, Defendant was found not guilty of wire fraud and guilty of the false tax return charge.  Defendant was sentenced on August 12, 2005 to a twenty-seven month term of imprisonment to be followed by thirty-six months of supervised release.  Defendant began serving his prison sentence on or about September 26, 2005. Defendant appealed his conviction and sought bail pending appeal in early 2006.  District Judge Smith granted Defendant's request on March 22, 2006, and Defendant remained free on bail while his appeal was considered.  While on bail, Defendant sought and was granted, over the Government's objection,

permission to travel outside the District for "business purposes." Defendant's appeal was unsuccessful, and he was returned to prison in July 2007.

On March 16, 2008, Defendant escaped from federal prison in New Jersey. He ultimately surrendered to law enforcement authorities in Rhode Island on March 19, 2008 and was charged with escape. Defendant's escape came on the heels of the execution of search and seizure warrants by the F.B.I. at his home on March 13, 2008 in connection with its investigation of the fraud allegations resulting in this prosecution. Defendant was brought before this Court on March 19, 2008 and was removed to New Jersey to face the escape charge. Defendant ultimately pled guilty to the escape charge and received a three-month prison sentence consecutive to Judge Smith's 2005 sentence and a concurrent thirty-six month term of supervised release.

Defendant's prison term expired on or about March 21, 2009. On March 11, 2009, the Grand Jury returned an indictment in this District charging Defendant with nine counts of mail fraud and one count of engaging in a monetary transaction with the proceeds of fraud. Defendant pled not guilty to those charges at his initial appearance and arraignment on March 21, 2009. Although Defendant is presumed innocent, the indictment establishes probable cause to believe that Defendant committed the offenses of mail fraud charged.

**Discussion**

Generally, the Bail Reform Act informs that a defendant should be released on bail on the least restrictive condition or combination of conditions that will reasonably assure the defendant's appearance when required and the safety of the community. See 18 U.S.C. § 3142(c)(1)(B). Applying these standards in CR No. 04-080S, this Court granted bail to Defendant in 2004 pending trial and in 2006 pending appeal. The Government argues that the balance has now tipped in favor of detention in this case for two primary reasons. First, it contends that Defendant is a risk of flight having escaped from

prison in 2008 and because he faces a substantial prison term if convicted in this case. Second, the Government contends that Defendant has shown that he is incapable of abiding by the standard bail condition that he not commit crimes and thus he is a financial danger to the community. It asserts that Defendant perpetrated the fraudulent scheme charged in this case while he was on bail pending appeal from March 2006 to July 2007.

As to the risk of flight, the Government bears the burden of proof by a preponderance of the evidence. United States v. Patriarca, 948 F.2d 789, 793 (1st Cir. 1991). The Government also bears the burden of proving Defendant poses a danger to the community, but must meet a higher "clear and convincing evidence" standard by statute. See 18 U.S.C. § 3142(f).

Finally, the Court must assess "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). The Bail Reform Act does not define or limit the concept of danger. Defendant argues that it is confined to physical danger, i.e., potential for violence. The Government argues that economic harm is also a "danger" cognizable under the Act. Neither the Government nor Defendant identified any First Circuit authority on this point, and this Court's research did not uncover any such authority.

There is support for the Government's position in cases arising in other Districts. See, e.g., United States v. Persaud, No. 05-cr-368, 2007 WL 1074906 (N.D.N.Y. April 5, 2007) ("economic harm qualifies as a danger within the contemplation of the Bail Reform Act"); and United States v. Giordano, 370 F. Supp. 2d 1256, 1270 (S.D. Fla. 2005) ("no question that an economic danger, like that posed by a serial defrauder, falls under the broad umbrella of 'dangerousness' as that term is used throughout the Bail Reform Act"). In United States v. Madoff, 586 F. Supp. 2d 240, 253 and n.11 (S.D.N.Y. 2009), the Court accepted that "in certain circumstances an economic or pecuniary harm may give rise to a consideration of danger" for purposes of pretrial detention and noted that "[t]he question appears to

3

become one of propensity to commit further crimes, even if the resulting harm is solely economic." This Court adopts the reasoning of these cases and agrees that the concept of "danger" under 18 U.S.C. § 3142(g)(4) may, at least in certain cases, extend to pecuniary or economic harm. This conclusion is consistent with the common definition of the term "danger" which is not limited to a risk of physical harm. See Black's Law Dictionary (8th ed. 2004) (defining danger as "peril; exposure to harm, loss, pain, or other negative result"). The nouns danger, peril, hazard and risk, all refer to exposure to harm or loss but "danger, the least specific, is applicable to any potentially harmful situation." The American Heritage Dictionary 364 (Second College Edition 1982).

### A. Risk of Flight

Applying the factors set forth in 18 U.S.C. §3142(g), the Court finds that the Government has met its burden of establishing that Defendant is a flight risk. Assessment of the flight risk posed in a particular case requires a calculation of the relative cost of remaining to face criminal charges or, in the alternative, fleeing to avoid the potential consequences of trial on such charges. The Court also must evaluate ties to the community, means to flee and past history. In this case, Defendant already fled once from federal supervision when he escaped from prison in 2008. As discussed above, his escape came directly on the heels of the execution of search and seizure warrants related to this case. Defendant's escape resulted in criminal charges being brought in this District against his wife (United States v. Gail DeSimone, CR No. 08-68S) and an associate (United States v. Louis Stein, CR No. 1:09-MJ-031LDA). These cases reveal that Defendant acted to cover his tracks after his escape and traveled to Massachusetts and New York seeking to raise funds from associates.[1] The Government also proffered at the detention

---

[1] For instance, Defendant's wife traveled from New Jersey with him after his escape but dropped him off in Connecticut presumably because of concern that their house was under surveillance. The next day, Defendant was driven to Rhode Island and enlisted Mr. Stein who reportedly drove him to Massachusetts and New York to try to raise cash from business associates. At one point, Mr. Stein also reportedly left Defendant at a museum in Boston and drove to Defendant's residence to request cash from Mrs. DeSimone for Defendant.

hearing that Defendant told a witness at the time that he "didn't want to spend the rest of his life in jail." Additionally, the Government represents that a preliminary sentencing guidelines calculation indicates that Defendant faces a very lengthy prison sentence if convicted.

The Court also finds that Defendant's proposed condition of electronic monitoring would not be sufficient in this case to eliminate the risk of flight. Although it can be an important tool of supervision, electronic monitoring cannot stop a person from fleeing. Rather, it alerts supervising authorities when a releasee is not where he or she is supposed to be and then relies on a chain of human reaction to determine the releasee's whereabouts. Thus, it is a useful, but not foolproof, tool of supervision. Defendant also proposes that he be permitted to work, and to support his wife's medical needs and drive her to appointments. Thus, there would necessarily be periods when Defendant would be out of the house and beyond the bounds of such monitoring.

### B.     Danger to the Community

The Bail Reform Act requires the Court to consider a defendant's past conduct and specifically "whether, at the time of the current offense..., the person was on probation, on parole, or on other release pending trial [or] appeal...." 18 U.S.C. § 3142(g)(3)(B). In this case, it is undisputed that the indictment charges Defendant with perpetrating a fraudulent scheme beginning in or about May 2006 – shortly after his release on bail pending appeal in CR No. 04-080S. Further, on June 19, 2006, Defendant filed a motion to travel because "it is necessary for him to travel to various parts of the country for business and that limiting such travel has had, and will continue to have, a deleterious effect on Defendant's business." (Document No. 104 in CR No. 04-080S). Defendant's request was granted by Judge Smith on July 7, 2006, over the Government's objection. (Id. at Document No. 106).

During this period of bail (according to the indictment), Defendant raised approximately $6 million in funds, assets and forgiven debts from several individuals throughout the country intended as

investments in certain inventions. In order to secure these investments, Defendant allegedly made false or fraudulent representations concerning the level of interest of third parties in purchasing the inventions and as to the imminency of such sales. Defendant allegedly spent these "invested" funds on personal expenses unrelated to the marketing or advancement of the inventions in question. In response, Defendant characterizes the substance of the indictment as a business dispute that is the subject of suits and counter-suits in Providence County Superior Court. Defendant presented both testimony and an affidavit from the attorney representing him in the Superior Court litigation.

Defendant's civil attorney opines that "the DeSimones will prevail in their defense" of the allegations made in the Superior Court litigation. (Def.'s Ex. A – Affidavit of Counsel at ¶ 5). However, he bases his opinion on an investigation limited to reviewing documents and interviewing the DeSimones, their accountant and corporate attorney. Id. There have been no depositions or discovery exchanged. Moreover, he did not testify as to any personal knowledge of the representations made by Defendant to investors or Defendant's use of the funds invested. As discussed above, these issues are at the heart of the fraud charges contained in the indictment. Although not harmful to Defendant's position, Defendant's civil attorney offered nothing by way of testimony or affidavit that rebuts the allegations of fraud charged in the indictment.

The bottom line is that Defendant was released on bail pending appeal and ordered "not [to] commit any offense in violation of federal, state or local law while on release." (Document No. 102 in CR No. 04-080S). He then sought and obtained permission to "travel to various parts of the country for business." Id. at Document No. 104. At the time, Defendant was appealing his federal felony conviction for filing a false tax return, and his record included a 2004 state court conviction for insurance fraud.

Despite these restrictions and apparent obstacles, Defendant reportedly was still able to raise over $6 million in assets from several "investors" during this period. At the time he perpetrated this allegedly

6

fraudulent scheme, Defendant was serving a seven-year term of state probation on a felony conviction for obtaining money under false pretenses (insurance fraud) and was on bail pending appeal in CR No. 04-080S. Defendant has shown an ability and a propensity to commit economic crimes undeterred in the past by conditions of probation or bail. Thus, this Court has no present confidence that Defendant would abide by conditions in this case.

**Conclusion**

For the reasons discussed above, the Court finds that the Government has met its burden of establishing that Defendant is a risk of flight and, alternatively, that he presents an economic danger to the community. The Court further finds that there are no conditions or combination of conditions of release that could be imposed to reasonably assure Defendant's appearance for future Court proceedings (including trial) or the economic safety of the community. Thus, the Court orders that Defendant remain detained pending trial and committed to the custody of the Attorney General or his designee for purposes of such pretrial detention.

SO ORDERED


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States District Court
April 1, 2009